

**Entered on Docket**
**March 17, 2009**

_____
**Hon. Bruce A. Markell**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

* * * * * *

In re:                                     )
                                           )        BK-S-04-21213-BAM (lead case)
RAYMOND SANFORD,                           )        BK-S-05-18112-BAM
                                           )        (Substantively Consolidated)
          Debtor.                          )
                                           )        Chapter 13
                                           )
                                           )        Date:       March 26, 2008
                                           )        Time:       3:00 p.m.
_____          )        Courtroom:  3

**OPINION REGARDING SANCTIONS**

**I. Introduction**

It is no secret that many, if not most, lawyers who represent consumer debtors in bankruptcy engage in a volume practice; that is, they accept many clients, charge them all a fixed fee, and then process the cases in bulk and with the use of trained non-lawyer staff. The distressing similarity of the financial plight of most consumers justifies this practice, as does the relatively simple tools the Bankruptcy Code uses to afford relief to the overburdened debtor. Taking on many similar clients also facilitates economies of scale, and ultimately reduces the cost to the consumer.

As accepted and as homogenizing as these realities are, however, consumer bankruptcies are still cases before courts of law. As such, these cases and the lawyers who appear in them are governed by the same rules of law – including the rules regarding professional responsibility and the local rules of practice – that apply in any case. Under these rules, lawyers who appear in this court must be competent, loyal to their clients, and ethical.

Attorney Randolph Goldberg's actions in these cases raise serious questions as to whether he has met these standards. As will be explored in more detail below, Mr. Goldberg filed two cases for

1  Raymond Sanford, the debtor in this case, ostensibly to secure for him one bankruptcy discharge.

2  Mr. Goldberg, however, managed Mr. Sanford's cases in such a way that Mr. Sanford has received

3  none.  Mr. Goldberg's conduct additionally caused both standing chapter 13 trustees and the court to

4  spend countless hours cleaning up the messes he made.  After raising these concerns through an

5  order to show cause, and after hearing Mr. Goldberg and his counsel, the court sanctions Mr.

6  Goldberg as set forth below.

7  **II. Facts**

8  *A. First Case – Case Number 04-21213*

9      Mr. Goldberg filed Mr. Sanford's first case on November 2, 2004.  That case sought relief

10  under chapter 7, and was assigned case number 04-21213 ("First Case").  The schedules filed with

11  the bankruptcy petition indicated that Mr. Sanford, an individual, non-business debtor, had five

12  unsecured creditors, owed $100,023 in the aggregate, and one secured creditor, a home mortgage

13  lender, owed $159,000.  Mr. Sanford's only substantial asset was his home, which he listed on his

14  bankruptcy schedules as having a lien-free value of $200,000.  If the schedules were accurate, Mr.

15  Sanford would have had $41,000 in equity in his house (the $200,000 lien-free value less the

16  $159,000 mortgage).

17      When Mr. Goldberg filed the First Case, the Nevada homestead exemption protected up to

18  $200,000 in equity in a home.  NEV. REV. STAT. § 115.010 (2003).  As a result, all of his equity

19  would have been fully exempt.  According to his statement filed in accordance with Bankruptcy

20  Rule 2016, Mr. Goldberg received $791 for his legal services in this case.

21      The First Case was assigned to the undersigned judge, and Stan Pack was assigned as the

22  chapter 7 trustee.  The case was initially categorized as a "No Asset Case," meaning that, as filed, it

23  did not appear that there would be any property available to the trustee to make any distributions to

24  unsecured creditors.  This designation also meant that creditors were not required to file proofs of

25  claim.  *See* FED. R. BANKR. P. 2002(e).

26      The assumptions behind the no-asset categorization, however, began to unravel soon after

1   filing. At the December 9, 2004, meeting of creditors held pursuant to 11 U.S.C. § 341(a), the

2   trustee, Mr. Pack, raised the possibility that Mr. Sanford's house was worth more than listed in the

3   schedules – so much more, in fact, that Mr. Pack seriously contended that there might be nonexempt

4   equity in the house which could be used to pay Mr. Sanford's unsecured debts. In response to

5   trustee Pack's concerns, Mr. Goldberg stated that he investigated the value of area homes

6   comparable to Mr. Sanford's. While Mr. Goldberg maintains that he was not able to determine the

7   value of Mr. Sanford's home at that time, he nonetheless decided it was advisable to convert Mr.

8   Sanford's case to one under chapter 13 of the Bankruptcy Code. In chapter 13, Mr. Sanford could

9   avoid a forced sale of his house by paying the value of his nonexempt equity to his creditors over

10   time through a chapter 13 plan.

11        Mr. Goldberg filed a motion to convert Mr. Sanford's case on March 2, 2005. Paragraph

12   five of the points and authorities in support of this motion stated "No discharge has been entered in

13   this proceeding." This was false. The court had already entered a discharge in Mr. Sanford's

14   chapter 7 case more than three weeks earlier, in an order dated February 8, 2005.[1] A copy of that

15   discharge had also already been sent to all of Mr. Sanford's creditors. In response to Mr. Goldberg's

16   conversion motion, trustee Pack's counsel filed a limited opposition, requesting the court to grant

17   conversion only if Mr. Sanford's chapter 7 discharge was vacated.

18        On April 6, 2005, Bankruptcy Judge Linda B. Riegle heard the conversion motion.[2] At this

19   hearing, Mr. Goldberg stated that his client was not opposed to revoking the discharge, since Mr.

20   Sanford intended to pay all claims in full through a chapter 13 plan to be filed after conversion.

21

---

22       [1]The certificate of mailing related to the discharge indicates that the notice was mailed to Mr. Goldberg

23   by first class mail on February 11, 2005. The court's electronic filing system indicates that Mr. Goldberg also received notice of the discharge by email.

24       [2]Judge Riegle heard the motion instead of the undersigned judge because all routine motions involving

25   chapter 7 trustees are heard at a set time every other week or as necessary. The three bankruptcy judges sitting in Las Vegas take turns hearing all these motions on a duty judge basis regardless of the formal assignment of

26   such cases. Judge Riegle was performing this duty judge role when she heard Mr. Goldberg's conversion motion on April 6.

1  After the court granted Mr. Goldberg's motion, he became responsible under Local Bankruptcy Rule

2  9021 to submit an order conforming to the court's oral ruling.[3]  To this end, Mr. Goldberg and the

3  court discussed the language that Mr. Goldberg would use in the order he would file.  Mr. Goldberg,

4  however, never filed an order following the hearing.

5       Eventually, the trustee's counsel filed an order memorializing and effecting the conversion

6  of Mr. Sanford's case  –  but he did not do so until November 22, 2006, over 20 months after the

7  hearing on the conversion motion.  In accordance with the court's oral ruling, the proposed order

8  presented by trustee's counsel revoked Mr. Sanford's chapter 7 discharge, and converted the case to

9  one under chapter 13.  Thereafter, a meeting of creditors under section 341(a) under the new chapter

10  was scheduled for January 9, 2007, and a new deadline – April 9, 2007 – was set for filing claims.

11  Rick Yarnall was appointed as Mr. Sanford's chapter 13 trustee.  Mr. Goldberg failed to appear at

12  the January 9, 2007, meeting of creditors.

13       *B. The Second Case – Number 05-18112*

14       Mr. Goldberg was not wholly inactive with respect to Mr. Sanford's case during the 20-

15  month period between the hearing on conversion motion and the date the order on that motion was

16  entered.  On August 16, 2005, four months after the hearing on the conversion motion, Mr.

17  Goldberg filed a second case for Mr. Sanford.  This case was under chapter 13, and was assigned

18  case number 05-18112 ("Second Case").  The schedules accompanying this new petition were either

19  identical or very similar to those prepared and filed by Mr. Goldberg in the First Case.  For example,

20  Schedule F, Creditors Holding Unsecured Non-Priority Claims, appears to be identical to the

21  Schedule F filed in the First Case.  Indeed, Mr. Goldberg confirmed this fact at the sanctions

---

[3]Local Bankruptcy Rule 9021(a) states:

(a) Preparation of entry of orders and judgments. Unless otherwise ordered, the attorney for the prevailing party must prepare all proposed findings of fact, conclusions of law, judgments, and orders, formatted in accordance with the court's electronic filing procedures described in LR 5005.

4

hearing; he testified that he filled out the schedules in the Second Case by referring to the schedules he filed in the First Case.  As a result, thanks to the marvels of the modern photocopier and bankruptcy-forms software, the listed name, address and amounts owed to creditors in the Second Case were identical to the listed name, address and amounts owed to creditors in the First Case.

The major difference in the schedules in the Second Case consisted of an increased valuation of Mr. Sanford's home.  Rather than the valuation amount of $200,000 used in the First Case, the schedules in the Second Case listed Mr. Sanford's home as having a lien-free value of $460,000. This increase in value meant that Mr. Sanford had equity in his house of $301,000 (the revised value of $460,000 less the mortgage of $159,000).  Had there been no change in exemption law, this would have meant that Mr. Sanford had nonexempt equity of $101,000 – almost enough to pay his unsecured creditors in full.

But Nevada law had changed in the interim.  State legislation went into effect on July 1, 2005, that increased the homestead exemption amount from $200,000 to $350,000.  NEV. REV. STAT. § 115.010 (2005) (as amended by Chapter 290, 2005 NEV. STAT. 1010).  As a result, Mr. Sanford's $301,000 equity in his house was, under state law, completely exempt.  At the show cause hearing, Mr. Goldberg testified that this change in law did not affect either the valuation chosen or the decision to file the Second Case.

In addition, as the Second Case was a new filing, Mr. Goldberg apparently believed it was appropriate to charge Mr. Sanford an entirely new fee.  Specifically, he charged Mr. Sanford his then-standard charge for filing a chapter 13 – $2,700.  The $2,700 fee was in addition to the $791 Mr. Sanford paid for Mr. Goldberg's work in the First Case.

The Second Case was assigned to Judge Riegle.  Kathleen A. Leavitt was appointed as the chapter 13 bankruptcy trustee.  Thus, the judge and the trustee for the Second Case were different from those assigned to the First Case.  The meeting of creditors for this case was set for September 27, 2005, and the deadline for creditors to file proofs of claim was set as December 27, 2005.  With hindsight, this date was extremely confusing; creditors who received this notice – and recall that Mr.

Goldberg testified that they were exactly the same creditors as in the First Case – had already received a notice that Mr. Sanford had received a chapter 7 discharge. They thus had no reason to suspect that the debts from the First Case were receiving a new life in the Second Case. Indeed, given the notice of discharge that these creditors received, filing a proof of claim for the debts covered by that discharge would arguably have violated the still extant chapter 7 discharge which had been entered in February of 2005. Complicating this picture, it would be more than 11 months before any creditor would receive notice that the discharge Mr. Sanford received in the First Case had been revoked. Not surprisingly, when the December 27, 2005, claims deadline came and went, no creditor had filed a proof of claim in the Second Case.

Shortly after filing the Second Case, Mr. Goldberg filed a chapter 13 plan for Mr. Sanford. That plan contemplated selling Mr. Sanford's residence and using any non-exempt proceeds to pay creditors. However, when no creditors submitted any claims by the deadline, Mr. Goldberg amended the plan. Under the new plan, the only payments contemplated were a $2,700 payment to Mr. Goldberg for his legal services and a $270 payment to Ms. Leavitt for her services as trustee. This plan would be funded with ten monthly payments of $300, and did not include the proceeds of the sale of Mr. Sanford's home. The amended plan was confirmed in an order entered May 26, 2006.

True to his stated intent, Mr. Sanford then sought to sell his house. In an order entered August 4, 2006, the court approved a stipulation between the debtor and the chapter 13 trustee for the sale of the house. Under this stipulation, the house was sold for $415,000, generating net proceeds in the amount of approximately $224,000. The stipulation provided that Mr. Goldberg was to be paid a fee of $750, over and above the two fees he had already collected, for services related to the sale of Mr. Sanford's home.

One year later, on August 31, 2007, Mr. Goldberg brought a motion seeking an order requiring Mr. Sanford's discharge to be entered in the Second Case under 11 U.S.C. § 1328(a). The grounds were that all debts covered by the amended plan – both of them – had been paid and thus

6

1    Mr. Sanford had successfully completed his plan.  The court orally granted the motion on October 4,

2    2007.  Mr. Goldberg, however, failed to submit an order regarding this motion.

3           Approximately two months later, the fact that Mr. Goldberg was prosecuting two different

4    chapter 13 cases for the same debtor, involving two different trustees, in front of two different

5    judges, finally came to light.  On December 13, 2007, trustee Leavitt filed motions under FED. R.

6    BANKR. P. 9024 in both the First Case and the Second Case.  Prior to hearing these motions, the

7    Second Case was administratively reassigned to the undersigned judge.

8           *C. Consolidation of Mr. Sanford's Cases*

9           Ms. Leavitt's motions were heard on shortened time on December 20, 2007.  At that hearing,

10   the court determined that the extraordinary relief provided for by FED. R. BANKR. P. 9024

11   (incorporating FED. R. CIV. P. 60(b)) was not required because no order regarding Mr. Sanford's

12   discharge in the Second Case was ever entered.[4]  The court ordered the two cases substantively

13   consolidated into a single case, with the First Case as the main case.  All creditors were renoticed

14   and new deadlines for filing claims were set (claims that were previously timely filed remained

15   valid).[5]  The court also set aside any orders with respect to professional compensation in the Second

16   Case.  Finally, the court reserved jurisdiction to impose sanctions on the responsible parties.[6]

17          *D. Order to Show Cause*

18          On January 4, 2008, this court entered the Order to Show Cause ("OSC") that is the subject

19   of this opinion.  This OSC was entered on the court's own initiative, pursuant to FED. R. BANKR. P.

20

21   _____

22          [4]Because no order was ever entered on the docket, the chapter 13 discharge ordered from the bench
     never became effective. *See* FED. R. BANKR. P. 9021 ("A judgment is effective when entered as provided in

23   Rule 5003."). Therefore, the extraordinary relief of FED. R. CIV. P. 60(b) was not required for the court to
     substantively consolidate and properly resolve Mr. Sanford's cases.

24          [5]Chase Bank USA, N.A., filed a Proof of Claim in the amount of $33,242.59 on March 2, 2007. This
     Proof of Claim was timely filed.

25

26          [6]Mr. Goldberg approved the terms of this order, which was entered on February 25, 2008 (dkt. #45 in
     04-21213), and did not appeal it.

7

1   9011(c)(1)(B),[7] and under the court's inherent powers to regulate practice before it.  The order set a

2   hearing date of February 13, 2008, and required Mr. Goldberg to file a response by February 8,

3   2008.  Mr. Goldberg did not file a response until February 12, 2008, a day before the scheduled

4   hearing.[8]  When Mr. Goldberg's late response was discovered at the February 13th hearing, the

5   court, being committed to allowing Mr. Goldberg a full and fair hearing regarding his conduct in

6   this case, allowed Mr. Goldberg to withdraw as counsel for the debtor, set new briefing deadlines,

7   and continued the hearing to March 26, 2008.

8          Mr. Goldberg then hired independent counsel, who timely submitted a brief arguing that

9   sanctions were not appropriate because: (1) Mr. Goldberg did not violate any rule by failing to file

10  an order after his conversion motion was granted; (2) it was not improper for Mr. Goldberg to

11  prosecute two simultaneous chapter 13 cases on behalf of Mr. Sanford; (3) Mr. Goldberg's fees with

12  regard to his representations of Mr. Sanford were reasonable; and (4) Mr. Goldberg has taken CLE

13  classes and implemented new technology and procedures in his office designed to avoid these types

14  of problems in the future.  The hearing on the OSC was held as scheduled on March 26, 2008.  Mr.

15  Goldberg testified at the hearing and presented argument through his attorney.  This court then took

16  the matter under submission.

17

18

19

20  ───────────────

21      [7]Fed. R. Bankr. P. 9011(c)(1)(B) states that "[o]n its own initiative, the court may enter an order
    describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or
22  party to show cause why it has not violated subdivision (b) with respect thereto."

23      [8]Mr. Goldberg's employee, Adam Parmelee, filed an affidavit on February 13, 2008, attempting to
    explain the untimely response.  This affidavit states that the untimely filing occurred as a result of the response
24  being given to a new employee who failed to understand that the response had to be filed by a date certain.  A
    lack of experienced staff does not excuse Mr. Goldberg's failure to properly supervise his employees.
25      The United States Trustee ("UST") was also invited to comment, and filed a timely response on
    February 11, 2008.  The UST, however,  attempted to introduce inadmissible evidence regarding Mr.
26  Goldberg's conduct leading up to the hearing on the OSC.

### III. Discussion

Although there are many candidates, the court will focus upon two actions that merit sanctions. The first is Mr. Goldberg's failure to prepare and submit an order after prevailing on the conversion motion, given its consequences to the court and to his client. The second action was Mr. Goldberg's filing of the petition that initiated the Second Case, when he knew of the pendency of the First Case and the disposition of the conversion motion.

*A. Failure to Prepare and Submit Order After Prevailing on the Motion to Convert*

Local Rule IA 4-1 ("LR IA 4-1") provides that "[t]he court may, after notice and opportunity to be heard, impose any and all sanctions on an attorney . . . who, without just cause: . . . (c) Fails to comply with these rules."[9]   Subsection (a) of Local Rule 9021 ("LR 9021"), entitled "Entry of Judgments and Orders," requires that: "[u]nless otherwise ordered, the attorney for the prevailing party must prepare all proposed findings of fact, conclusions of law, judgments, and orders . . . ."[10] Separate and apart from this rule, the transcript of the April 2005, hearing on the conversion motion indicates that it was without doubt that the court intended for Mr. Goldberg to prepare the order. Moreover, the dialogue between the court and Mr. Goldberg indicates that Mr. Goldberg understood that it was his obligation to prepare and submit the order.

At the OSC hearing, Mr. Goldberg's counsel argued that there is a conflict between LR 9021(a) and FED. R. CIV. P. 58(c)(2)(B).  FED. R. CIV. P. 58 is made applicable in bankruptcy

---

[9]FED. R. BANKR. P. 9029, in conjunction with FED. R. CIV. P. 83, grants the district court, acting by a majority of its district judges, the authority to promulgate local rules of practice. This district has exercised this authority, enacting the Local Rules of Practice for the United States District Court for the District of Nevada.

[10]Mr. Goldberg's response to the OSC argues that Mr. Goldberg was not the "prevailing party" with regard to the conversion motion, since the court imposed the condition of discharge revocation at the insistence of the chapter 7 trustee.  Mr. Goldberg abandoned this argument at the OSC Hearing, admitting on the stand that he was the prevailing party on the motion.  Regardless, the court finds that Mr. Goldberg was the prevailing party on the motion since his client received the relief requested which would have been unnecessary had the chapter 7 discharge been allowed to stand.

proceedings by virtue of FED. R. BANKR. P. 9021.[11] Subsection (c) of Rule 58, entitled "Entering

Judgment," provides:

> (c) Time of Entry. For purposes of these rules, judgment is entered at the following
> times: . . .
> > (2) if a separate document is required, when the judgment is entered in
> > the civil docket under Rule 79(a) and the earlier of these events occurs:
> > > (A) it is set out in a separate document; or
> > > (B) 150 days have run from the entry in the civil docket.

Mr. Goldberg believes that Rule 58 provides for the automatic effectiveness of a judgment 150 days

after entry on the docket. He thus contends that any lesser time imposed by local rule creates an

impermissible conflict. This argument is without merit. Mr. Goldberg confuses Rule 58's

provisions regarding the timing of the effectiveness of an order for purposes of appeal with LR

9021's provisions regarding the duty to prepare an order. While the national rule promotes finality

for purposes of appeal, the local rule strives to ensure that the court's docket, and its oral orders, are

as congruent as possible, and that there is no prejudicial lag between a court's oral ruling and the

docketing of the order giving that ruling effect.

      Even on Mr. Goldberg's reading, however, he did not comply. Rule 58 requires something

to be entered on docket before the 150-day period commences, and the uncontroverted evidence here

is that Mr. Goldberg submitted nothing. As such, there is no conflict between these rules; they serve

different purposes, and do so in a way that does not conflict.

      Mr. Goldberg also argues that LR 9021 does not specify the time within which the prevailing

party must prepare and submit an order. Without such a specification, so his argument goes, he

cannot be sanctioned for failing to submit an order. The lack of a prescribed time, however, does

---

[11] FED. R. BANKR. P. 9021 states:

Except as otherwise provided herein, Rule 58 F.R.Civ.P. applies in cases under the Code.
Every judgment entered in an adversary proceeding or contested matter shall be set forth on
a separate document. A judgment is effective when entered as provided in Rule 5003. The
reference in Rule 58 F.R.Civ.P. to Rule 79(a) F.R.Civ.P. shall be read as a reference to Rule
5003 of these rules.

10

1   not eliminate the need for compliance with the rule. Where a procedural rule does not contain a

2   prescribed time, compliance with the rule is generally required to occur within a reasonable time.

3   *See, e.g.*, Flinn v. Rains (*In re* Rains), 338 B.R. 99, 103 (Bankr. E.D. Cal. 2006) (finding that when

4   no time is specified for compliance with a federal rule of civil procedure, compliance is required

5   within a reasonable time under the circumstances). The court need not decide, for purposes of this

6   case, how many days or weeks constitute a reasonable time because of the extended length of time

7   that passed without an order being submitted. Mr. Goldberg failed to comply with LR 9021 for 20

8   months following his prevailing on his Motion to Convert (and it was the trustee's counsel, not Mr.

9   Goldberg, that eventually submitted the order). The failure to submit an order for almost two years

10  after a hearing is patently unreasonable. Therefore, the court finds that Mr. Goldberg failed to

11  comply with LR 9021(a).

12          *B. Sanctions for Unjustifiably Filing a Second Chapter 13 Case for Mr. Sanford*

13          Mr. Goldberg's actions in filing the Second Case also merit scrutiny. There is no dispute

14  that Mr. Goldberg filed the Second Case while the First Case was still active. But Mr. Goldberg

15  contends that there was nothing wrong in doing so; he argues that case law and the bankruptcy rules

16  support the propriety of filing multiple chapter 13 cases for one debtor. The court disagrees. Not

17  only was Mr. Goldberg's conduct objectively unreasonable, and thus violative of FED. R. BANKR. P.

18  9011, but Mr. Goldberg's filing of the Second Case was in bad faith.

19          FED. R. BANKR. P. 9011 regulates the practice of attorneys that appear before the bankruptcy

20  court. The part of Rule 9011 that is relevant to this case is subsection (b), which provides:

21          By presenting to the court (whether by signing, filing, submitting, or later advocating)
            a petition, pleading, written motion, or other paper, an attorney or unrepresented party
22          is certifying that to the best of the person's knowledge, information, and belief, formed
            after an inquiry reasonable under the circumstances,–
23                  (1) it is not being presented for any improper purpose, such as to harass,
                    or to cause unnecessary delay or needless increase in the cost of
24                  litigation; [and]
                    (2) the claims, defenses, and other legal contentions therein are
25                  warranted by existing law . . . .

26  Attorney compliance with Rule 9011 is assessed through an objective standard. Smyth v. City of

Oakland (*In re* Brooks-Hamilton), 329 B.R. 270, 283 (B.A.P. 9th Cir. 2005), *aff'd in part, rev'd in part, and remanded*, 271 Fed. Appx. 654 (9th Cir. 2008) (per curiam).  Subjective bad faith is not necessary; the attorney must only fail to meet the standard of a "competent attorney admitted to practice before the [pertinent] court." *Id.* (quoting Zaldivar v. City of Los Angeles, 780 F.2d 823, 830 (9th Cir. 1986), *overruled on other grounds by* Cooter & Gell v. Hartmarx Corp., 496 U.S. 384 (1990); *see* Orange Prod. Credit Ass'n v. Frontline Ventures Ltd., 792 F.2d 797, 800 (9th Cir. 1986))

Rule 9011(b)(1) "provides for the imposition of sanctions when a filing is frivolous, legally unreasonable, or without factual foundation, or is brought for an improper purpose."[12]  Simpson v. Lear Astronics Corp., 77 F.3d 1170, 1177 (9th Cir. 1996) (citing Warren v. Guelker, 29 F.3d 1386, 1388 (9th Cir. 1994).  In the Ninth Circuit, frivolousness and improper purpose are considered on a sliding scale, "where the more compelling the showing as to one element, the less decisive need be the showing as to the other."  Dressler v. The Seeley Co. (*In re* Silberkraus), 336 F.3d 864, 870 (9th Cir. 2003).  With regard to subsection (b)(2) of Rule 9011, "[a]n attorney's signature on a complaint is tantamount to a warranty that the complaint is well grounded in fact and 'existing law' (or proposes a good faith extension of the existing law) . . . ."  Christian v. Mattel, Inc., 286 F.3d 1118, 1127 (9th Cir. 2002).

1.    *Propriety of Filing Multiple Chapter 13 Cases and Sanctions Pursuant to FED. R. BANKR. P. 9011*

Mr. Goldberg cites four cases in support of his position that it is permissible for a debtor to file a case while another case is pending.  They are Jim Walter Homes, Inc. v. Saylors (*In re* Saylors), 869 F.2d 1434 (11th Cir. 1989); Davis v. Mather (*In re* Davis), 239 B.R. 573, 575 n.2 (B.A.P. 10th Cir. 1999); *In re* Taylor, 261 B.R. 877, 880, 883 (Bankr. E.D. Va. 2001); and *In re*

---

[12]As this court discussed in *In re* Aston-Nevada Ltd. P'ship, 391 B.R. 84, 99-100 & n.27  (Bankr. D. Nev. 2006), there is sufficient identity between FED. R. BANKR. P. 9011 and FED. R. CIV. P. 11 to warrant consultation of Rule 11 jurisprudence to interpret similar provisions of Rule 9011.  Klein v. Wilson, Elser, Moskowitz, Edelman & Dicker (*In re* Highgate Equities, Ltd.), 279 F.3d 148, 151 (2d Cir. 2002).

Cowan, 235 B.R. 912 (Bankr. W.D. Mo. 1999).

Instead of the facts here – the filing of a second case when under an obligation to convert that case to the same chapter as the new filing – these cases concern what is known as a "chapter 20" filing.[13]   In each cited case, the debtors received a discharge under chapter 7, and before the chapter 7 case was closed, the debtor filed a new case under chapter 13.   In two of the cases – *Saylors* and *Cowan* – the court found that the chapter 20 was permissible.   In these cases the debtor either needed the subsequent chapter 13 relief to manage secured mortgage debt – *Saylors* – or needed it to retain their car – *Cowan*.   In both cases the court found little substantive effect on creditors (other than the secured creditors whose security was at issue).   While the remaining two cases contain dicta indicating no per se limitation on chapter 20's, they did find that the debtors' actions were in bad faith, and either converted or dismissed each case.   *Davis*, 239 B.R. at 578 (attempt to discharge debts in subsequent chapter 13 that were declared nondischargeable in prior chapter 7 case bad faith under facts); *Taylor*, 261 B.R. at 888 (abuse found when debtor did not need chapter 13 relief, and only purpose of filing was to frustrate legitimate creditors).

But these cases are, in a strong sense, unexceptional.   The Supreme Court has indicated that chapter 20 cases are not per se inappropriate.   "Congress did not intend categorically to foreclose the benefit of chapter 13 reorganization to a debtor who previously has filed for Chapter 7 relief." Johnson v. Home State Bank, 501 U.S. 78, 87 (1991).   After *Johnson*, it is beyond dispute that the Bankruptcy Code does not prohibit filing of a second case while an earlier case is pending.

The converse, however – that successive filings can *never* be in bad faith – is not true.   When a debtor files a second successive case, the court must examine all of the filings together and consider "the result achieved by such filings reviewed against the statutory requirements."   Downey Sav. and Loan Ass'n v. Metz (*In re* Metz), 820 F.2d 1495, 1497 (9th Cir. 1987).  *Johnson*

---

[13]There is no chapter 20 of the Bankruptcy Code.  Rather, debtors are referred to as filing chapter 20 when they file a case under chapter 7 of the Bankruptcy Code, and after receiving a discharge, file a new case under chapter 13. Debtors often do this because it allows the debtor to repay any debts that were non-dischargeable under chapter 7 over the three to five year repayment period of the chapter 13 plan.

13

1   anticipated this.  The Court there stated:  "the bankruptcy court retains its broad equitable power to

2   'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of

3   [the Code.]' § 105(a).  Any or all of these provisions may be implicated when a debtor files serially

4   under Chapter 7 and Chapter 13."  *Johnson*, 501 U.S. at 88.

5          This case fits well *Johnson*'s cautionary language.  Given the oral conversion, there was no

6   need to file the Second Case.  Moreover, Mr. Goldberg took unfair advantage of creditor confusion

7   in filing the Second Case, effectively eliminating creditor claims while increasing his overall

8   attorney's fee.   And the result was that Mr. Sanford, by means of delay and a change of law,

9   pocketed all of the net sales proceeds from his home without paying his creditors a cent.

10          In assessing whether Mr. Goldberg's filing of the Second Case violated FED. R. BANKR. P.

11   9011(b)(1), the court applies the sliding scale inquiry, examining both frivolousness and improper

12   purpose.  *Silberkraus*, 336 F.3d at 870.  Following *Metz's* required review in these cases, the Second

13   Case has none of the characteristics found appropriate in either the cases cited by Mr. Goldberg or in

14   any other case that has come to this court's attention.  This is not a chapter 20 situation where the

15   attorney fully prosecuted the first case, resulting in a discharge, and filed a successive case to

16   advance the legitimate objectives of his client.  Here, Mr. Goldberg effectively abandoned the First

17   Case, leaving it idle at a time when he was obligated to file an order converting it to a case under

18   chapter 13.  And during this idle time, creditors were sandbagged into thinking their claims

19   remained discharged, since Mr. Goldberg never followed-up with an order memorializing the

20   court's April 6, 2005, oral order.

21          Failing to fit within any recognized excuse for opening a second case without completing the

22   first, Mr. Goldberg makes no convincing case for creating any new exceptions.  Mr. Goldberg both

23   signed the petition that initiated the Second Case and later advocated it before this court.  He

24   therefore certified that to the best of his knowledge, information, and belief, formed after an inquiry

25   reasonable under the circumstances, (1) the petition was not presented for an improper purpose, and

26   (2) the claims, defenses, and other legal contentions contained in that petition were warranted by

14

1    existing law.  *See* FED. R. BANKR. P. 9011(b).

2         Based on a review of the entire record and all of the authorities available to the court, as set

3    forth above, this court finds that any reasonable inquiry under the circumstances would have

4    revealed that the petition in the Second Case was not warranted by existing law.  As a result, Mr.

5    Goldberg has failed to meet the standard of a competent attorney admitted to practice before the

6    United States Bankruptcy Court for the District of Nevada and further finds that Mr. Goldberg's

7    conduct violated FED. R. BANKR. P. 9011(b)(2).

8              *2.    Bad Faith*

9         While Rule 9011 addresses the objective violation of the rules, it does not address the

10   subjective motivation that animated these actions.  But motive undeniably influences sanctions  –

11   the clueless are not as culpable as the conniving, even if the actions are the same.  Put another way,

12   should the range of sanctions be expanded if the action taken was driven by improper motives?  The

13   answer is yes.  Bankruptcy courts have the inherent power to sanction attorneys for egregious

14   behavior that exceeds the scope of FED. R. BANKR. P. 9011.  Hale v. U.S. Trustee, 509 F.3d 1139,

15   1148-49 (9th Cir. 2007); Miller v. Cardinale (*In re* DeVille), 361 F.3d 539, 550-51 (9th Cir. 2004);

16   *see also* Caldwell v. United Capital Corp. (*In re* Rainbow Magazine, Inc.), 77 F.3d 278, 283-84 (9th

17   Cir. 1996) (citing Chambers v. NASCO, Inc., 501 U.S. 32, 43, 45-46 (1991)); *In re* Brooks-

18   Hamilton, 2009 WL 226002, *11-14, BAP No. NC-08-1233-DJuMk (B.A.P. 9th Cir., Jan. 21, 2009)

19   (slip opinion).

20        Congress's intent that bankruptcy courts possess these powers is evidenced by 11 U.S.C. §

21   105(a).[14]  *Caldwell*, 77 F.3d at 283-84; *see* Havelock v. Taxel (*In re* Pace) 67 F.3d 187, 193-94 (9th

22   _____

23        [14]Section 105(a) provides:

24        The court may issue any order, process, or judgment that is necessary or appropriate to carry
          out the provisions of this title. No provision of this title providing for the raising of an issue

25        by a party in interest shall be construed to preclude the court from, sua sponte, taking any
          action or making any determination necessary or appropriate to enforce or implement court

26        orders or rules, or to prevent an abuse of process.

Cir. 1995) (permitting bankruptcy courts to award sanctions under 11 U.S.C. § 105(a); Franchise

Tax Bd. v. Lapin (*In re* Lapin), 226 B.R. 637, 642 (B.A.P. 9th Cir. 1998) ("[T]he authorities make

clear that the bankruptcy court has the inherent power[] . . . to sanction."). In the Ninth Circuit,

sanctions based upon this inherent power must be based upon bad faith conduct. *DeVille*, 361 F.3d

at 550-51; *see* Christian v. Mattel, Inc., 286 F.3d 1118 (9th Cir. 2002) ("To impose sanctions under

its inherent authority, the . . . court must 'make an explicit finding . . . that counsel's conduct

constituted or was tantamount to bad faith.'"). For four reasons, the court finds that Mr. Goldberg's

actions were taken in bad faith.

First, the court finds that Mr. Goldberg filed the Second Case, in part, to take advantage of

the Nevada legislative change that increased the homestead exemption. In the Ninth Circuit, the

debtor's exemptions are determined at the date of filing. 11 U.S.C. § 522(b)(2)(A) (2000); Zibman

v. Tow (*In re* Zibman), 268 F.3d 298, 302-03 & n.14 (5th Cir. 2001) (citing White v. Stump, 266

U.S. 310, 312 (1924) ("[The Bankruptcy Code] makes the state laws existing when the petition is

filed the measure of the right to exemptions.")). When the First Case was filed, the allowed

homestead exemption was only $200,000. The sale of Mr. Sanford's home would have monetized

the substantial nonexempt equity he had in his home, and that amount would have been paid to

creditors. One way to properly take advantage of the increased exemption would have been for Mr.

Sanford to seek dismissal of the First Case, and then refile if dismissal was granted. This course of

action would not have assured success. Under 11 U.S.C. § 707(a), dismissal is allowed only for

cause, and an attempt to take advantage of a change in law that benefits the debtor, and harms

creditors, may have drawn creditor or court objection and would not have qualified. Mr. Goldberg's

choice to seek conversion ran the same risk of creditor or court objection; section 1307(b)

conditions a chapter 13 debtor's right to dismiss if the case had been converted from another

chapter.[15]

---

[15]Indeed, under Marrama v. Citizens Bank of Mass., 549 U.S. 365, 374-75 (2007), bad faith may preclude conversion or dismissal even if the case had not been previously converted.

16

Rather than risk these potential challenges by a party in interest, Mr. Goldberg sought to circumvent the Bankruptcy Code by simply abandoning the First Case and filing the Second Case. The court finds this conduct to be in bad faith. It frustrated the legitimate expectations of creditors and undermined the policies of the Bankruptcy Code.

Second, the court considers Mr. Goldberg's knowledge of the prior case as further evidence of bad faith. This is not a situation in which an attorney was negligent in not investigating and discovering that another lawyer filed an earlier case. Mr. Goldberg was the attorney of record for the First Case. Any attorney of reasonable intelligence and diligence knows what cases he has filed, and knows (or can determine quickly) the status of those cases. Not only *should* Mr. Goldberg have known about the First Case when he filed the Second Case, the record shows he *did* know of the prior case. The petition in the Second Case refers to the First Case. More importantly, at least for bad faith purposes, Mr. Goldberg testified that he filled out the schedules for the Second Case by copying portions of the schedules from the First Case. This conduct underscores that Mr. Goldberg either knew of the pendency of the First Case and knew of his duties with regard to that case, or willfully ignored the status of the First Case once he took notice of its existence. Regardless, this court finds such conduct to be in bad faith.

Third, bad faith is further evidenced by Mr. Goldberg's financial dealings with the debtor. After charging in full for the First Case, Mr. Goldberg then charged Mr. Sanford the full $2,700 fee for a chapter 13 case. This is indicative of bad faith for two reasons. The initial reason is that if Mr. Goldberg had done what he should have, and gone forward with the converted First Case, he likely would not have been able to charge Mr. Sanford the full chapter 13 fee, based on the prevailing practice in this district and what courts in this district (including this court) find to be reasonable fees. *See* 11 U.S.C. § 329(b) (allowing the court to order the repayment of attorney compensation that exceeds the reasonable value of a debtor's attorney's services). It would have been improper and unreasonable for Mr. Goldberg to charge the full $2,700 fee, given the amount of work done in the First Case that would transfer over seamlessly to the Second Case (such as the preparation of

1  schedules and any investigation into the debtor's financial affairs).  Second, Mr. Goldberg had a

2  duty to his client to follow through with his duties in the First Case, and not to cover up his

3  defalcation with a new case and a new fee.  Mr. Sanford had every expectation that Mr. Goldberg

4  would do what he was required to do by the rules of professional responsibility, and not to charge

5  extra.[16]

6      Fourth, the court considers Mr. Goldberg's experience in making its determination regarding

7  bad faith.  Mr. Goldberg testified that he has filed between 15,000 to 20,000 bankruptcy cases over

8  the last 12 years of practice.  He boldly asserts in advertisements that he can solve almost any

9  consumer's financial problems.[17]  "That's what I do" is his trademark tagline on local television ads.

10  Someone of such experience cannot resort to rookie excuses.  And this experience means that the

11  interconnectedness of the two cases cannot be ignored; Mr. Goldberg either used his experience to

12  obtain an unjust and inappropriate recovery for his client, or he is too sloppy and careless to practice

13  in this court.  Given the choice between these two conclusions, the court reluctantly chooses the

14  first.  Mr. Goldberg knew what he was doing, and apparently thought no one would care or do much

15  if his perfidy came to light.  He was wrong.  This court therefore imposes sanctions, listed next in

16

17      [16]The court also questions Mr. Goldberg's taking a fee for the sale of the house.  The sale was part of

18  the feasibility analysis that is necessary for plan confirmation, and Mr. Goldberg's extra fee for that service –
whatever it was – was unreasonable.

19      [17]The court has taken judicial notice of the content of Mr. Goldberg's television advertisements

20  pursuant to FED. R. EVID. 201.  This rule permits the court to take judicial notice, at any stage of a proceeding,
of adjudicative facts that are capable of accurate and ready determination. United States v. Saccoccia, 58 F.3d

21  754, 776 n.1 (1st Cir. 1995) (taking judicial notice of advertisements featuring the fictional persona Juan Valdez
because the existence of such ads is a fact "'generally known within the territorial jurisdiction of the trial

22  court' . . . [that] 'exist[s] in the unaided memory of the populace'") (citing 21 CHARLES A. WRIGHT & KENNETH
W. GRAHAM, JR., FEDERAL PRACTICE AND PROCEDURE § 5105, at 489 (1977)); see also Ariz. Contractors

23  Ass'n, Inc. v. Candelaria, 534 F. Supp.2d 1036, 1056 (D. Ariz. 2008) (taking judicial notice of certain television
and billboard advertisements).  The court takes notice of Mr. Goldberg's advertisements only for the limited

24  purpose of illustrating the manner in which Mr. Goldberg holds himself out to the public, rather than as proof
of the truth of the matter asserted: that Mr. Goldberg is an experienced bankruptcy practitioner. Microsoft Corp.

25  v. BEC Computer Co., Inc., 818 F. Supp. 1313, 1319 (C.D. Cal. 1992) (taking judicial notice of the existence
of certain advertisements, but not the truth of the substance of those ads); see Am. Cyanamid Co. v. S.C.

26  Johnson & Son, Inc., 729 F. Supp. 1018, 1021-22 (D. N.J. 1989) (judicial notice of television advertisement).

1   Part IV, against Mr. Goldberg pursuant to its inherent powers.

2   **IV. Sanctions**

3   As set forth above, sanctions against Mr. Goldberg are appropriate under LR IA 4-1(c), FED.

4   R. BANKR. P. 9011(c), and the court's inherent authority.  With regard to the sanctions imposed

5   under FED. R. BANKR. P. 9011(c), subsection (c)(2) specifies the nature of sanctions, providing:

6
7
8
> A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. . . . [T]he sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

9   With regard to sanctions imposed under the courts inherent authority and imposed pursuant to LR

10   IA 4-1(c), the court's formulation of sanctions is governed by 11 U.S.C. § 105(a), which permits the

11   court to enter any order necessary to enforce court rules and to prevent an abuse of process.  Price v.

12   Lehtinen (*In re* Lehtinen), 332 B.R. 404, 412 (B.A.P. 9th Cir. 2005).

13   The Ninth Circuit Bankruptcy Appellate Panel has adopted the ABA Standards with regard

14   to the formulation of sanctions, in order to help achieve consistency when imposing attorney

15   discipline and ensure that all relevant factors are considered so that any sanctions imposed are

16   reasonable.  *Id.* at 416; *see also In re* Brooks-Hamilton, 2009 WL 226002, *8-11, BAP No.

17   NC-08-1233-DJuMk (B.A.P. 9th Cir., Jan. 21, 2009) (slip opinion); AMERICAN BAR ASS'N, JOINT

18   COMMITTEE ON PROFESSIONAL SANCTIONS, STANDARDS FOR IMPOSING LAWYER SANCTIONS

19   (1992).[18]  *See also* GEORGENE M. VAIRO, RULE 11 SANCTIONS: CASE LAW, PERSPECTIVES AND

20   PREVENTATIVE MEASURES § 3.04[a], at 566-74 (3d ed., Richard G. Johnson, ed. 2003).

21   Under the ABA Standards, the court must consider four factors:

22   1. Whether the duty violated was to a client, the public, the legal system, or the profession;

23   2. Whether the lawyer acted intentionally, knowingly, or negligently;

24

25
26   [18] The standards were originally adopted in 1986 and were amended in 1992.  The current version bears a copyright date of 2005.  The standards can be found at: http://www.abanet.org/cpr/regulation/standards_sanctions.pdf.

3. Whether the lawyer's misconduct causes a serious or potentially serious injury; and

4. Whether there are aggravating and/or mitigating factors.

*Id.* In the OSC, this court invited Mr. Goldberg to submit his views on the ABA standards for formulating sanctions, which Mr. Goldberg did in his response. The court has considered Mr. Goldberg's response, along with all of the other evidence in the record, in formulating its sanctions.

With regard to the first ABA factor, the court finds Mr. Goldberg violated a duty to his client to zealously and diligently represent his client by leaving the First Case dormant for 20 months. Mr. Goldberg also violated a duty to his client by charging him unreasonable fees. Mr. Sanford has not received what he paid Mr. Goldberg to obtain: a discharge of his debts. This failure arose because Mr. Goldberg abandoned the First Case before its ultimate resolution, and because of Mr. Goldberg's bad faith prosecution of the Second Case. Mr. Sanford was also charged an unreasonable fee for the Second Case, since Mr. Goldberg was able to, and did, copy a substantial portion of the filings in the First Case when he initiated the Second Case. His conduct also violated his duties to the public and the profession, because dilatory and bad faith conduct like that performed by Mr. Goldberg brings the profession into disrepute and lowers public confidence in the legal system.

With regard to the second factor, as set forth above, the court finds that Mr. Goldberg acted negligently with regard to the violation of LR 9021, and intentionally and in bad faith with regard to the filing of the second petition.

With regard to the third factor, Mr. Goldberg's conduct caused a serious economic injury to his client, who paid an unreasonable sum for seriously deficient representation. Mr. Goldberg's bad faith conduct has also deprived Mr. Sanford's creditors from being paid timely, if at all.

With regard to the fourth factor, the court has considered the actions Mr. Goldberg has submitted as mitigating factors. "Goldberg has taken two CLE classes, hired two additional staff, and updated his court e-mail account to lessen the likelihood of problems in the future." The court gives these actions weight in determining the appropriate sanctions for Mr. Goldberg's conduct.

The guiding principle for all sanctions is deterrence; the aim of any sanction is to ensure that what happened here does not happen again. FED. R. BANKR. P. 9011(c)(2). The audience for such sanctions is also broader than just Mr. Goldberg. Under Rule 9011, the court can fashion the sanction so that it will deter "comparable conduct by others similarly situated." *Id.* Deterrence, however, requires some sense of the motivations of the person being sanctioned. An ideologue is unlikely to be deterred from improper conduct by a fine; a lawyer without self-respect cares little for public reprimands. Constructing an appropriate sanction thus requires some assessment of Mr. Goldberg and what type of sanctions would deter the type of conduct found in this opinion to be objectionable.

As indicated above, Mr. Goldberg engages in a volume consumer bankruptcy practice. He extensively advertises, and presumably believes such advertisements enhance his reputation sufficiently to induce more consumers to engage his services. His conduct in this case also indicates that each time he can take a fee, he does – in this case, he requested fees for the filing of the First Case, the filing of the Second Case, and the sale of Mr. Sanford's home. Finally, his bad faith in the filing of the Second Case indicates that he is prone to taking actions for which he calculates that he may not have to pay the full cost. The court does not know how many other cases exist in which Mr. Goldberg's actions fall beyond the standard of practice, and simply haven't been caught or reported.

Therefore, weighing the appropriate factors and considering all of the evidence in the record, the court hereby imposes the following sanctions on Randolph Goldberg in an effort to ensure that Mr. Goldberg, and others in his position, will not engage in similar conduct in the future:

1.   Mr. Goldberg is to receive a public reprimand for his conduct in these cases in the form of the publication of this opinion in the West Reporter system, and in any other reporter system generally publishing bankruptcy court opinions. This sanction goes to equalizing any disparity between Mr. Goldberg's public persona and his private practices, as evidenced by this case.

21

2.    Mr. Goldberg is to return all fees charged Mr. Sanford.  After all this confusion, Mr. Sanford has still not received his discharge.  The utter failure to secure for Mr. Sanford the relief sought initially in 2004, when viewed in light of Mr. Goldberg's pattern of missing hearings and filing late responses, and when such relief could have been easily obtained, justifies a forfeiture of all fees, including those related to the sale of Mr. Sanford's house.  The stark truth is that, despite all the fees paid to Mr. Goldberg, Mr. Sanford received no lasting relief from his financial problems.  To police this provision, Mr. Goldberg must file with the court, no later than 90 days after the date of the entry of this opinion, a declaration as to whether Mr. Sanford has been refunded his money; such declaration shall attach all copies of canceled checks payable to Mr. Sanford.

3.    Mr. Goldberg's conduct is sufficiently egregious that this court believes that he no longer deserves the benefit of any doubt as to the propriety of his practices.  He is therefore directed to submit a copy of this opinion with every fee application he submits in this district for work done during the two-year period following the date of entry of this opinion.[19]  During such period, he is also directed to deliver a copy of this opinion to each client that he files a bankruptcy petition for, once his aggregate billings for that client, for any one case or related matters, exceed $5,000.[20]  This sanction is designed to deter future conduct such as occurred in these cases by requiring Mr. Goldberg to inform those he deals with of his past indiscretions.  Finally, Mr. Goldberg is also directed, during the same two-year period, to file

---

[19]In lieu of duplicate submissions, Mr. Goldberg may request that the chapter 13 trustees of this district sign acknowledgments with each fee application that they know and are aware of the contents of this opinion.

[20]The court has observed that the standard fee for a chapter 7 case in this district appears to range from $700 to $1,200, and the standard fee for a chapter 13 case in this district appears to range from $4,000 to $4,700. Thus, this sanction is intended to require Mr. Goldberg to deliver this opinion to his clients only in cases in which he performs services beyond those normally required in standard cases.

quarterly reports in this court indicating his compliance with this paragraph and identifying the number of clients he has disseminated a copy of this opinion to during the reporting period.

4.    For the two-year period following the date of entry of this opinion, should Mr. Goldberg be served with a motion or an order to show cause that seeks, as relief, sanctions for his conduct in a case or proceeding in this court, or in any other state or federal court in Nevada, he shall deliver a copy of this opinion to the person or entity serving him with such motion or order, and shall include a copy of such opinion in any response to such motion or order that is filed with the court.

5.    To the extent that Mr. Sanford still desires his discharge, Mr. Goldberg shall pay all costs and expenses, including attorneys' fees, as may be necessary for Mr. Sanford to obtain his discharge.  To police this provision, Mr. Goldberg must file with the court, no later than 90 days after the date of the entry of this opinion, a declaration as to whether Mr. Sanford desires to obtain his discharge, and what steps have been taken to secure legal counsel for Mr. Sanford (which shall not be Mr. Goldberg); such declaration shall attach all copies of canceled checks payable to counsel for Mr. Sanford.

### V. Conclusion

Randolph Goldberg has violated LR 9021, FED. R. BANKR. P. 9011(b), and committed an abuse of process by his bad faith filing in relation to his representation of Raymond Sanford.  The above represents this court's findings of fact and conclusions of law.  A separate order shall be entered specifically imposing the sanctions in accordance with FED. R. BANKR. P. 9021 (incorporating FED. R. CIV. P. 58).[21]

---

[21]Publication of this opinion in the West reporter system shall be stayed for two weeks following the entry of the sanctions order to permit Mr. Goldberg, should he choose to do so, to seek relief under FED. R. BANKR. P. 9023, or, should he appeal, to seek a stay pending appeal.

Copies sent to:

CHRISTOPHER PATRICK BURKE atty@cburke.lvcoxmail.com

RANDOLPH GOLDBERG randolphgoldberg@yahoo.com

KATHLEEN A. LEAVITT courtsecf3@las13.com

JAMES F. LISOWSKI lisowskilaw@aol.com

U.S. TRUSTEE - LV - 7 USTPRegion17.LV.ECF@usdoj.gov

RICK A. YARNALL ecfmail@LasVegas13.com

AUGUST B. LANDIS
300 LAS VEGAS BLVD. S., #4300
LAS VEGAS, NV 89101

RAYMOND SANFORD
2318 RYAN CONLEY CT.
GASTONIA, NC 28056

# # #